UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :    CASE NO. 21-CR-325-ABJ |
| v. | : |
| | :    18 § U.S.C. 111(a)(1) |
| SALVATORE VASSALLO, | : |
| | : |
| Defendant. | : |

**FILED**
MAY 11 2023
Clerk, U S District & Bankruptcy
Courts for the District of Columbia

<u>STATEMENT OF OFFENSE</u>

1. The Government respectfully submits the following Statement of Offense in support of a plea of guilty by defendant Salvatore Vassallo to Count 2 of the ~~Indictment~~ Information in the above-captioned matter.

       JB    SV
       RR

2. If this case were to go to trial, the government would prove the following facts beyond a reasonable doubt:

3. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

4. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

5. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November

J.V. 5/11/2023

3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

6. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

7. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

8. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

S.V. 5/11/2023

9. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

**Vassallo's Participation in the January 6, 2021, Capitol Riot**

10. On January 6, 2021, the defendant, Salvatore Vassallo, traveled from New Jersey to Washington, DC, to protest Congress's Certification of the Electoral College vote.

11. Vassallo was part of a group of rioters that gathered outside the north side of the U.S. Capitol building. On January 6, 2021, at approximately 4:25pm, on the north side of an elevated portion of the Upper West Terrace numerous officers attempted to instruct rioters to move off of US Capitol grounds. During this time, some of the rioters actively resisted and assaulted officers. At approximately 4:26pm, as shown in body worn camera (BWC) footage from Metropolitan Police Department (MPD) Officer A.C. Salvatore, Vassallo emerged from the riot crowd and faced the officers instead of turning the other way to depart. Vassallo was then observed lowering his face mask and appeared to light a cigar in his mouth while still facing the officers who were repeatedly fending off attempts by other rioters to resist and assault them.

S.V. 5/11/2023

Several seconds later, Vassallo then abruptly and seemingly unprovoked, charged at MPD Officer Mark Eveland who was in the process of assisting other officers and fending off repeated attempts by other rioters to resist and assault the officers. Vassallo grabbed and pushed Officer Eveland with what appeared to be a significant amount of force. Vassallo then fled the area.

12. The defendant knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a). Specifically, defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties by charging, grabbing, an pushing Officer Eveland with significant force. The defendant further admits that he knew at that time of the assault of, resisting, opposition to, impeding of, intimidation of, or interference with the officer that the officer was engaged in the performance of his official duty or that he assaulted, resisted, opposed, impeded, intimidated, or interfered with the officer on account of his performance of his official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: /s/ Barry K. Disney
Barry K. Disney
Trial Attorney/ Detailee

Julie Bessler
*Julie Bessler*
5/11/23

S.V. 5/11/2023

DEFENDANT'S ACKNOWLEDGMENT

I, **SV**, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4/21/2023

Salvatore Vassallo
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/2/2023

Ronald J. Ricci
Attorney for Defendant

S.V. 5/11/2023