UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SALVATORE VASSALLO,<br><br>Defendant. | Case No. 22-cr-00325-ABJ |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Salvatore Vassallo to 27 months' imprisonment, two years' supervised release, $2,000 in restitution to the Architect of the Capitol and the $100 mandatory assessment. The Guidelines range as agreed in the plea agreement and as recommended in the Presentence Investigation Report is 24 to 30 months, and the United States recommends a mid-range 27-month sentence.

I.   INTRODUCTION

The defendant, Salvatore Vassallo, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.9 million in losses.[1]

---

[1] At the time that Vassallo entered into the plea agreement on May 11, 2023, the approximate

1

Vassallo drove from New Jersey to Washington, D.C. on January 5, 2021[2] to protest Congress' certification of the Electoral College vote. Once in D.C., he travelled to the Capitol, entering the restricted area that had been established by U.S. Capitol Police and marked with signs, fencing, and barriers. He gathered with other rioters on the Upper West Terrace and positioned himself by two breached U.S. Capitol Building doors, ignoring police officers trying to disperse the mob, smoking a cigar, and then shoving D.C. Metropolitan Police (MPD) Officer M.E. so hard that he almost fell off a wall to the landing a few feet below.

For this violation of 18 U.S.C. § 111(a)(1), the government recommends that the Court sentence Vassallo to 27 months' incarceration, the middle of the advisory Guidelines' range of 24-30 months, the agreed range in the plea agreement and that recommended in the Presentence Investigation Report (PSR). A 27-month sentence reflects the gravity of Vassallo's conduct, but also acknowledges his early admission of guilt.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case,

---

losses suffered as a result of the siege at the United States Capitol was calculated at $2,881,360.20. By July 7, 2023, the estimated loss had increased to $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. MPD also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2]     The Statement of Offense incorrectly states that Vassallo travelled from New Jersey to Washington, D.C. on January 6, 2021. It appears (from this picture and hotel records) that Vassallo travelled to Washington, D.C. on January 5, 2021.

ECF Dkt. 21, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

**B.     Vassallo's Role in the January 6, 2021 Attack on the Capitol**

As reflected in this picture, posted to a Discord group on or about January 1, 2021, Vassallo identified with the Proud Boys prior to January 6, 2021:



Image 1: Photograph from ECF Dkt. 1-1, at p. 2

The night before, on January 5, 2021, Vassallo joined a group of Pro-Trump supporters

3

and stood behind the police as they argued with counter protesters during a confrontation near Black Lives Matter Plaza in Washington:


Image 2

The government has not uncovered evidence of Vassallo's whereabouts on January 6, 2021, until approximately 3:48 p.m. At that time, as officers tried to clear the riotous mob from the U.S. Capitol Building and the grounds, Vassallo ignored a police officer's orders to leave the Upper West Terrace. *See* Exhibit 1 (body worn camera video showing Vassallo being turned away from accessing the area where ultimately the assault occurred 45 minutes later.)

In this screenshot from Exhibit 1 (and more fully set out in the video submitted as Exhibit 1), Vassallo is seeking access to Upper West Terrace, and the officer is barring access:



Image 3: Screenshot from Exhibit 1 at 3:48:33 pm

Instead of heeding the officer's orders denying him access to the area near the U.S. Capitol Building, Vassallo climbed onto the low wall visible to the left of the railing in Image 1 and positioned himself near two breach points into the U.S. Capitol Building, the Parliamentarian Door (identified in Image 2 as the Senate Fire Door) and the Senate Wing Door:

5



Image 4: West Side of Capitol Building

Just before 4:30 pm, Vassallo (identified as AFO 338 in Image 2 above) remained in the same area, continuing to ignore officers' orders to leave. Instead, Vassallo lit up a cigar, stood between the officers and his fellow rioters, and generally milled about the Upper West Terrace. Vassallo's actions are reflected in still images below and the videos submitted as Exhibits 2 and 3:



Image 5: Screenshot from Exhibit 2 at 4:23:52 pm



Image 6: Screenshot from Exhibit 3 at 4:26:11 pm

The Upper West Terrace is divided by a low wall, as depicted in Images 4 and 5. Vassallo and Officer M.E. were standing on the elevated part of the Upper West Terrace. A few seconds later, Vassallo approached Officer M.E. who was standing on the edge of the divider between the upper and lower levels of the UWT, assisting his fellow officers in clearing the rioters away from the U.S. Capitol building. Officer M.E.'s attention was on other rioters when Vassallo grabbed his head and neck and shoved him, as if to push him off the wall onto the lower level of the UWT.









Images 7-10: Screenshots from Exhibit 3 at 4:26:38 pm through 4:26:39 pm.

Vassallo continued his attack on officer M.E. until another police officer sprayed Vassallo with pepper spray, at which point Vassallo retreated back into the crowd of rioters.



Image 11

9

### III. THE CHARGES AND PLEA AGREEMENT

As reflected in Exhibit 3, while rioters were assaulting officers at one part of the officer line, and Officer M.E. was focused on those assaults, Vassallo shoved Officer M.E. from a different vantage point. On September 29, 2022, the Government filed an information charging Vassallo with seven counts, including Count One, Obstruction of Law Enforcement during Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) and Count Two, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). On, May 11, 2023, Vassallo pled guilty to Count Two pursuant to a plea agreement.

### IV. STATUTORY PENALTIES

Vassallo now faces sentencing for assault, in violation of 18 U.S.C. § 111(a)(1). As noted by the plea agreement and the PSR, Vassallo faces statutory maximums of 8 years of imprisonment, three years of supervised release, and a $250,000 fine. The Court also must impose a $100 special assessment.

### V. THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Here, the PSR accurately reflects the following Guidelines calculation:

Count Two: 18 U.S.C. § 111(a)(1)

| | | | |
|---|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | | +6 |
| | | **Total** | **20** |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | | -3 |
| **Adjusted Offense Level:** | | | **17** |

*See also* Plea Agreement at ¶ 5(A) (wherein the parties agreed to the above calculations).

The PSR calculated Vassallo's criminal history category as I, which is not disputed. PSR ¶ 45. With an adjusted offense level of 17 and a criminal history category I, Vassallo's Guidelines imprisonment range is 24 to 30 months. Vassallo's plea agreement mirrors these calculations.

## VI.  SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a mid-range 27-month imprisonment term.

### A.  Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Vassallo's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Ignoring repeated orders to leave the Upper West Terrace, Vassallo instead stayed and milled about with his fellow rioters. At 4:26 pm, he walked up to MPD Officer M.E., who was standing at the edge of a low wall, and shoved him hard. The nature and circumstances of Vassallo's offense were of the utmost seriousness, and fully support the government's recommended 27-month sentence.

### B. Vassallo's History and Characteristics

Vassallo is a 60-year-old construction worker who is married with two adult children. PSR ¶¶ 64, 74, 75, 80. His prior convictions for disorderly conduct, trespassing, burglary, and obstruction of justice, while old, also reflect that he is familiar with the criminal justice system. PSR ¶¶ 40-44. Most instructive is the 1986 obstruction conviction where it appears that Vassallo shoved an officer in a melee where officers were trying to do their jobs. PSR ¶ 44. Given this background, he should have known better than to join a violent riotous mob and physically assault

11

a law enforcement officer.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Vassallo's criminal conduct on January 6, 2021 was the epitome of disrespect for the law.

### D. The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[3] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a 27-month imprisonment term. As reflected in Images 1 and 2 above, this was not Vassallo's first brush with extremist anti-government groups. Vassallo's involvement with extremist groups warrants specific deterrence in the form of a significant sentence.

### E. The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement

---

[3] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F. Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being

asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[4]

---

[4] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[5]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Creek*, 21CR00645-DLF, the defendant shoved one officer, kicked another, and threw a thick strap with a metal buckle at a line of officers in the Lower West Terrace. Like Vassallo, he did not enter the U.S. Capitol Building. He pled guilty to violating 18 U.S.C. § 111(a)(1) and faced the same Guidelines as Vassallo.[6] The officers did not suffer bodily injury from Creek's assaults. Creek had no criminal history and served in the U.S. Marines. When interviewed by agents, Creek evinced little remorse for his actions. The Court sentenced Creek to 27 months' imprisonment, 12 months' supervised release, and $2,000 in restitution.

In *United States v. Willden*, 21CR00423-RC, the defendant approached officers at the East Columbus doors and sprayed at least six of them with a chemical irritant. He also entered the

---

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

[6] The PSR writer calculated the Guidelines under § 2A2.4, but the Court agreed with the parties' calculations under the plea agreement, found an aggravated assault, and applied § 2A2.2.

Capitol Building. He pled guilty to violating 18 U.S.C. § 111(a)(1) and faced the same guideline range as Vassallo. The officers did not seek medical attention from Willden's assault. The Court sentenced Willden to 24 months' incarceration, 36 months' supervised release, and $2,000 in restitution.

In *United States v. Clayton,* 22-CR-0139-RCL, Clayton was also on the Upper West Terrace. As officers sought to clear the area at around 4:23 pm, Clayton grabbed at a shield held by an officer. Seven minutes later, Clayton grabbed the face shield and shoved a second officer when that officer sought to take a baton from Clayton's hand. Clayton pled guilty to two 18 U.S.C. § 111(a)(1) assaults. Like Vassallo, Clayton had no criminal history. The Court sentenced Clayton to concurrent 30-month imprisonment terms, 24-month supervised release terms, and $2,000 in restitution.

These cases have facts similar to those in Vassallo's case. They involve defendants who shoved, punched, kicked, or sprayed one or more law enforcement officers on restricted U.S. Capitol grounds, but they were not sentenced for using a deadly or dangerous weapon, and the officers were not injured. Further, the defendants had little to no criminal history. Based on these facts, courts sentenced these defendants between 24 to 30 months, and supervised release of 12 to 36 months. The Government's recommendation of 27 months' incarceration followed by 24 months' supervised release for Vassallo falls squarely within this range.

## VII. RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[7] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victim in this case, Officer M.E., did not suffer bodily injury from Vassallo's assault. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Vassallo must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role Vassallo played in the riot on January 6.[8] Plea Agreement at ¶ 11. As the plea agreement reflects, as of April 5, 2022, the damage estimate from the Capitol riot was "approximately $2,881,360.20, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies. *Id.* (As noted above in footnote 1, the damages estimate has since been updated by the Architect of the Capitol, USCP, and MPD.) Vassallo's restitution

---

[7] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[8] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and Officer M.E. *See* PSR ¶ 113.

### VIII.  CONCLUSION

For the reasons set forth above, the Government recommends that the Court impose 27 months' imprisonment, 24 months' supervised release, and $2,000 in restitution to the Architect of the Capitol, and the mandatory assessment of $100.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:  *s/ Alexandra F. Foster*
ALEXANDRA F. FOSTER